Hon. Mag. Judge Lisa J. Cisneros
United States District Court, Northern California
San Francisco, California

August 3, 2026

Re: Case No. 3:25-MC-80306-LJC; *Aditya Berlia v. Discord Inc.*

To the Honorable Court:

Pursuant to Section F.5 of Court's Civil Standing Order, the parties file this joint letter outlining their discovery dispute related to Applicant's request for a custodian of records deposition and Discord's document production.

## I. RELEVANT DISCOVERY DATES AND CASE MANAGEMENT ISSUES

On October 6, 2025, Applicant Berlia filed his 28 U.S.C. § 1782 application. Doc. 1. Berlia requested an order granting him authority to serve a subpoena to Discord Inc.

On April 29, 2026, the Parties filed a stipulation for a proposed subpoena, Doc. 29, which the Court granted on April 30, 2026. Doc. 30. On May 6, 2026, the court clerk issued the subpoena to Discord, Inc. Doc. 31.

On May 11, 2026, Discord served its production of five (5) pages.

On July 27, 2026, the Court ordered the Parties to confer pursuant to section F.5 of the Court's Civil Standing Order and to file this letter. Doc. 33. On July 29, 2026, the Parties met and conferred via video-conference regarding the discovery dispute but could not reach agreement. (Attestation Enclosed).

On July 31, 2026, Discord, having identified an inadvertent human error affecting its initial search, produced additional responsive records**.**

## II. DISCOVERY ISSUE

Whether Applicant Berlia is entitled to a custodian of records deposition to determine whether Discord Inc. has produced all noncontent data and to provide information regarding the substance and scope of Discord's production guidelines and production?

## III. THE PARTIES' POSITIONS

### a. Applicant Berlia's Statement

Applicant Berlia filed his 28 U.S.C. § 1782 Application seeking discovery from Respondent Discord for use in foreign civil custody proceedings involving the welfare of his children. Doc. 1. Berlia is seeking data and documents from Discord relating to the activities of two of its subscribers on a polygamous and sexually explicit website hosted by a Discord server, in which non-sexual pictures of the children were posted without Mr. Berlia's consent. Discord, in turn, agreed to produce noncontent data to Berlia in response to the subpoena negotiated

between the parties. The proceedings in Dubai have been elevated to a criminal investigation and orders and warrants have been issued by the Dubai court.

The two Discord subscribers in question provided consent affidavits that agree to Discord producing all information related to their subscriber identifiers, without limitation to content or noncontent data. *See* Ex. 1 and 2. Discord, in response, agreed that it "can produce the data requested in the consent affidavit …" *See* Exh. 3 (email chain from L-K Bernstein (Jan. 16, 2026)).[1] Discord stated that "the list of documents you requested covers any records about servers associated with [the] account." *Id.* On May 11, 2026, Discord produced five (5) pages of documents:

- Two pages provide account information and state that "no session information [was] found."
- Three pages are a "guild history." *See* Exh. 6 (Discord document production).

The production is deficient. Discord did not produce customer support records and transactional records, including session start times, IP addresses, and metadata. Discord provided no context for the "guild history." The term "guild" is not defined in type or scope. Nor is it possible to determine whether the "TRUE" or "FALSE" mean a certain "guild" was deleted.

Discord did not produce metadata related to noncontent for messages by and between subscribers or the names, usernames, emails, and phone numbers of subscribers who received this information. Discord did not produce time stamps for messages related to groups, servers, and channels. Moreover, Discord did not produce current documents related to the two subscribers despite the fact that, on information and belief, they remain active users. Also missing is any noncontent data related to Parnika Berlia, which should have been produced because her subscriber ID and account is linked to the other two subscribers.

Berlia asked Discord to confirm that it had produced all non-content documents. Discord refused, stating that it "does not, in response to informal requests, confirm the existence of user data …." *See* Ex. 4.

Discord's attorneys subsequently threatened sanctions against Applicant's attorney when conferring. Two days later, Discord implicitly conceded Applicant's concerns were correct and it made a supplemental production. Ex. 5. Discord's production remains incomplete.[2] To remedy the deficiencies, Discord offered "a phone call" with its "Trust and Safety Counsel, i.e., unsworn statements from yet another Discord attorney. Discord neither withdrew its sanctions threat nor represented that it produced all responsive noncontent data or documents.

Discord's opposition should be rejected for the following additional reasons:

---

[1] Berlia has reserved the right to seek "content" related documents.

[2] Discord's supplemental production consists largely of additional login data and history related to deleted messages. Notably absent from Discord's supplemental production are customer support records and transactional records, including session start times, IP addresses, and metadata. The production remains deficient.

1. *Discord states that "Berlia concendes that he is not seeking a deposition about Discord's response to the subpoena."* Incorrect. Berlia specifies the data that is missing from Discord's deficient productions in detail, above.

2. *Discord contends that it will suffer "undue burden or expense."* However, Discord fails to support this objection with facts or evidence showing the undue burden or expense. *See Louisiana Pac. Corp. v. Money Mtk. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (the party opposing discovery "has the burden of clarifying, explaining and supporting its objections with competent evidence.).

3. *Discord states that it "produced a tranche of records" in response to the original subpoena.* "Tranche" is defined as "a single part, slice, or portion of a larger whole." *See* https://www.merriam-webster.com, accessed Aug. 3, 2026. Discord originally produced five (5) pages of documents. It never suggested that it was a portion of a larger production.

4. *Discord states that Applicant has not identified deficiencies in it supplemental production after its allegedly "inadvertent" nonproduction of responsive documents.* False. Footnote 2 states the deficiencies of Discord's supplemental production. Applicant included the footnote in the initial draft of this joint letter brief.

5. Discord misplaces its reliance on dicta in the Ninth Circuit's decision in *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D, 86, 88 (N.D Cal. 1995). That decision addresses non-parties in an adversary lawsuit. Discord is the respondent in a miscellaneous action. The issue in that case was whether the non-party was unduly burdened by having to "produce virtually every piece of paper it had ever generated regarding the plaintiff." *Id.* at 87. Unlike the nonparty, Discord has not supported its undue burden objection with evidence. The decision is therefore inapplicable.

6. *Discord waived compliance with the parties' consent stipulation.* Discord agreed to produce documents in this matter based on the subscriber consent of Godwin and Ortega, which was not coextensive to the subpoena and did not comply with the stipulation. Discord never raised this objection before today and therefore it has been waived.

Discord agreed to produce noncontent data and documents. *See* Ex. 3. Discord, in its response, does not deny this claim. To the extent that Discord is intentionally attempting to limit the scope of the agreed upon production after-the-fact, it is acting in bad faith. Applicant's request for a custodian of records deposition and sworn testimony should be granted.

### A. <u>Respondent Discord Inc.'s Position</u>

This Court ordered the parties to address whether Applicant should be permitted to subpoena Discord for a deposition regarding its response to the stipulated subpoena. Dkt. 33. But Berlia concedes that he is not seeking a deposition about Discord's response to the subpoena—he instead wants to question whether Discord produced *non-responsive* non-content data and to explore "the substance and scope of Discord's production guidelines and production." *See* Sec. II, supra. Rule 45, Rule 26, and § 1782 do not permit that discovery.

Discord is a nonparty to the underlying domestic dispute whose only connection to this matter is as a records custodian. Applicant therefore must "take reasonable steps to avoid imposing undue burden or expense" on Discord, and the Court likewise must protect it from unwarranted burden. Fed. R. Civ. P. 45(d)(1); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry) (cleaned up). A § 1782 proceeding, likewise requires the Court to consider whether the requested discovery is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004).[3]

**Discord complied with the stipulated subpoena.** Dispositively, Discord has already complied with the stipulated subpoena by producing responsive records within its possession, custody, and control in the form those records are kept in the ordinary course of business, as required by Rule 45. Any authenticity concerns may be resolved through Rule 902(11), making deposition testimony unnecessary.

Discord produced a tranche of records shortly after the Court issued the subpoena. *See* Ex. 4. Following the parties' July 29 meet-and-confer, Discord discovered two isolated affecting its initial search: the records custodian entered an incorrect search parameter and omitted one historical data source. Discord immediately reran the search using the correct parameters and supplemented its production. The initial omission resulted from inadvertent and isolated data-entry mistakes—not any decision to withhold responsive records or any deficiency in Discord's systems—and Discord explained the issue in its supplemental production letter. *See* Ex. 5.

Significantly, Berlia's position did not change after Discord corrected the inadvertent collection error and supplemented its production. Rather than identifying any remaining deficiency in the production of responsive records, Applicant continues to seek testimony regarding whether Discord possesses additional categories of non-responsive information and regarding Discord's internal collection practices. That confirms the requested deposition is not directed at remedying an incomplete production, but at exploring what other information Discord might possess.

**To the extent Berlia seeks additional records, the proper mechanism is a subpoena—not a deposition.** The production corresponds to the five categories identified in the stipulated subpoena. Berlia incorrectly asserts that session IP addresses and related metadata were not produced; they were included in the supplemental production. His complaint regarding "customer support records" fares no better because the stipulated subpoena never requested that category.

---

[3] Discord never "threatened" sanctions, as Berlia contends (although Berlia has made a practice of doing so). During the Parties' July 29 meet and confer, Discord raised that it was considering a Rule 45(d)(1) motion based on the undue burden and unusual expense associated with the volume of Berlia's extra-judicial demands. Berlia refused to engage on the topic, and instead said "Bring it on, I'm not speaking to you any more" and abruptly ended the call. It is not Discord's usual practice to bring such unprofessional behavior to the Court's attention, and does so here only in response to Berlia's misrepresentation.

If Berlia now wishes to seek additional categories of non-content information, the parties already agreed how to proceed: by obtaining and serving a subpoena identifying the specific categories sought. Dkt. 29. Discord has already, in response to Berlia's request, identified the categories of information it considers non-content (*See* Ex. 3) and agreed not to object on burden or overbreadth grounds to appropriately tailored subpoenas (Dkt. 29). A deposition is not a substitute for a subpoena duces tecum.

Berlia instead repeatedly asks Discord to confirm that it has produced "all non-content documents." Discord has respectfully declined, but has offered to confirm that, following its diligent search, it has produced all *responsive* non-content records in its possession, custody, or control. *See, e.g.*, Exh. 4.[4] Therein seems to lie the rub—Berlia wants to know if Discord possesses any *other, non-responsive* records about the targeted accounts. But discovery does not require a nonparty to catalog or disclose non-responsive records. *See Dupraz v. Does 1-10*, 721 F. Supp. 3d 1000, 1003 (N.D. Cal. 2024) (quashing deposition subpoena and issuing protective order where nonparty Meta had already satisfied discovery obligations by responding to subpoena). Such an inquiry is textbook fishing and unduly burdensome, and would raise significant privacy concerns for Discord subscribers.

**To the extent Berlia contends he does not understand what certain categories mean, Discord has offered to assist.** Berlia contends that he lacks understanding of certain records, such as the term "guild." As a compromise, Discord has offered a phone call with Discord's Trust and Safety Counsel to answer this sort of question. *See* Exh. 7 (July 31 email). To date, Berlia has not taken Discord up on its offer.

**The parties stipulated to procedures for consent-based production.** To the extent Berlia wishes to obtain records based on subscriber consent, the parties' January 29 stipulation provides the agreed procedure, including a court-issued subpoena describing the requested records, an explanation why the subscriber cannot obtain them directly, and a notarized authorization from the account holder coextensive with the subpoena.[5] Berlia has not followed that agreed process. During the parties' July 29 meet-and-confer, Berlia again refused to do so.

"[T]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,* 161 F.R.D. 86, 88 (N.D.Cal.1995). Because Discord has complied with the stipulated

---

[4] Berlia selectively and misleadingly quotes Discord as stating that it "does not, in response to informal requests, confirm the existence of user data . . .". While it is true that Discord generally does not respond to informal requests, what Discord actually conveyed in response to Berlia's request was that Discord "does not, in response to informal requests, confirm the existence of user data *beyond what is responsive to valid legal process*." Exh. 4.

[5] Berlia again selectively and misleadingly quotes the parties' communications. Berlia claims Discord "agreed that it can produce the data requested in the consent affidavit. . . ." *See* supra. The rest of that sentence was "but note, that affidavit does not include consent for all subscriber records, it appears to be limited to information about a single server from his account." Exh. 3. Discord went on to advise Berlia regarding options for obtaining Discord user data, consistent with Discord's cooperative posture throughout this litigation. *Then*, the parties stipulated to the agreed procedure, which Berlia has refused to abide.

subpoena, corrected an inadvertent collection error, and offered less burdensome alternatives where appropriate, the requested deposition would impose unnecessary burden on a nonparty while offering little, if any, likely benefit. The Court should therefore decline to authorize the requested deposition.

Respectfully submitted,

**CURTIS, MALLET-PREVOST, COLT& MOSLE LLP**

*/s/ Eric J. Cassidy*
Eric J. Cassidy
ecassidy@curtis.com

*Attorney for Applicant Aditya Berlia*

**ZWILLGEN LAW LLP**

*/s/ Laura-Kate Bernstein*
Laura-Kate Bernstein (*pro hac vice*)
Laura-kate@zwillgen.com

*Attorney for Respondent Discord Inc.*

Encl: Attestation re: Meet and Confer
Exhibits 1–7

**SIGNATURE ATTESTATION**

I, Laura-Kate Bernstein, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all counsel have concurred in this filing.

Dated: August 3, 2026

*/s/ Laura-Kate Bernstein*
Laura-Kate Bernstein (*pro hac vice*)
Laura-kate@zwillgen.com

*Attorney for Respondent Discord Inc.*