Oliver M. Kiefer (SBN 332830)
ZwillGen Law LLP
369 Pine Street, Suite 506
San Francisco, CA 94101
Telephone: (415) 590-2335
oliver.kiefer@zwillgen.com

Laura-Kate Bernstein (admitted *pro hac vice*)
ZwillGen PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 706-5252
laura-kate@zwillgen.com

*Attorneys for Respondent*
*Discord Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Aditya Berlia,<br><br>*Applicant*,<br><br>v.<br><br>Discord Inc.,<br><br>*Respondent*. | Case No. 3:25-MC-80306-LJC<br><br>**DECLARATION OF LAURA-KATE BERNSTEIN IN SUPPORT OF DISCORD INC.'S RESPONSE TO MOTION TO STRIKE AND REQUEST FOR COSTS AND EXPENSES** |

I, Laura-Kate Bernstein, hereby declare as follows:

1. I am counsel of record for Respondent Discord Inc. ("Discord") in this matter. I am admitted *pro hac vice* before this Court. I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2. I submit this Declaration in support of Respondent Discord's Opposition to Applicant's Motion to Strike and Request for Costs.

**I. The Court-Ordered Meet-and-Confer**

3. On July 27, 2026, after the Court directed the parties to meet and confer pursuant to Section F.5 of the Court's Civil Standing Order, I emailed Applicant's counsel requesting to schedule the required conference.

4. After receiving no response, I followed up on July 28, 2026.

5. The parties ultimately met and conferred by videoconference on July 29, 2026, beginning at approximately 10:00 a.m. ET.

6. I was the only attorney representing Discord present during the videoconference.

7. During the conference, I explained Discord's position regarding the discovery dispute that is the subject of the parties' joint letter.

8. During the discussion, I advised Applicant's counsel that Discord was considering seeking relief under Federal Rule of Civil Procedure 45(d)(1) based on the burden and expense associated with Applicant's repeated informal requests concerning Discord's subpoena compliance.

9. Applicant's counsel responded, in substance, "Bring it on. I'm not speaking to you anymore." He then abruptly terminated the videoconference before I had completed the presentation of Discord's position.

10. I contemporaneously memorialized the discussion in attorney notes I prepared during and immediately following the conference.

11. Approximately one hour after the conference, I sent Applicant's counsel an email referencing his abrupt termination of the call and proposing a process for preparing the parties'

joint letter that would minimize after-hours revisions and facilitate compliance with the Court's Standing Order. Exhibit A is a true and correct copy of that email.

12. Applicant's counsel did not respond to that proposal.

13. Shortly after the conference, I informed my client of the substance of the meet-and-confer, including Applicant's counsel's statements and the manner in which the conference concluded.

14. Because I found the conclusion of the conference unusual, I also discussed the interaction with colleagues shortly thereafter.

**II. Supplemental Production**

15. After the parties' meet and confer, Discord discovered an inadvertent collection error affecting its initial production.

16. Upon discovering the error, Discord promptly corrected the collection, supplemented its production, and informed Applicant's counsel.

17. On July 31, 2026, I proposed that the parties file a joint status update advising the Court of the supplemental production and offered to circulate an initial draft.

18. Applicant's counsel advised that he would review the supplemental production with his client and respond to me in twenty-four hours.

19. Applicant's counsel did not do so.

20. On August 3, 2026, I followed up again regarding preparation of the joint letter because the filing deadline had arrived.

21. Applicant's counsel thereafter advised that he would provide his portion of the joint letter by 2:00 p.m. ET and would assume responsibility for filing the joint letter only if Discord finalized its portion by 5:00 p.m. ET.

22. Applicant's counsel circulated his portion of the statement shortly after 2:00 p.m.

23. Applicant's counsel circulated five of the six exhibits referenced in his portion of the statement shortly after 4:00 p.m.

24. I circulated Discord's addition to the joint letter to Applicant's counsel at 6:46 p.m. I advised that I was waiting for one additional client sign-off but was sending the draft to ensure Applicant had an opportunity to edit his statement, if he so wished.

25. At 9:37 p.m., Applicant's counsel sent what he described as a clean copy and a "pdf/redline" of Applicant's revisions to his statement. In the same email, he instructed as follows: "However, if Discord makes changes to its position, please send me a redline. Applicant does not intend to further respond to Discord's statement or any changes, but I'd like to review any changes before its filed. Once that's done, you can sign the attestation and my signature by permission." A true and correct copy of that email was attached as Exhibit 1 to Applicant's Motion to Strike.

26. Applicant's email attached both a clean version and what was represented to be a redline version of the draft. The two documents did not correspond, requiring me to reconcile the documents before preparing the final filing.

27. Discord did not make any substantive changes to its position after receiving Applicant's 9:37 p.m. draft.

28. Nevertheless, I prepared and transmitted a redline reflecting Discord's revisions before filing the joint letter.

29. I then filed the joint letter consistent with Applicant's written instructions.

30. The parties did not hold a conference on August 3, 2026.

**III. Footnote 3**

31. Applicant's August 3 draft continued to characterize the parties' July 29 meet-and-confer as involving multiple Discord attorneys "threaten[ing] sanctions against Applicant's attorney." The 9:37 p.m. draft included additional criticism of Discord's conduct during that conference.

32. I believed those characterizations were inaccurate.

33. I therefore added Footnote 3 to Discord's section of the joint letter to provide Discord's understanding of what had occurred during the July 29 meet-and-confer.

34. Footnote 3 did not alter Discord's substantive position regarding the underlying discovery dispute.

35. At the time I prepared Footnote 3, it accurately reflected my recollection of the July 29 meet-and-confer.

36. It accurately reflects my recollection today.

37. Footnote 3 was based upon my contemporaneous recollection of the conference, my contemporaneous attorney notes, and communications I made immediately following the conference.

38. At no time did I fabricate, invent, or knowingly misstate any quotation or factual assertion contained in Footnote 3.

## IV. Communications Following the Filing

39. Following the filing of the joint letter, Applicant's counsel asserted that the quotation contained in Footnote 3 was factually baseless.

40. On the morning of August 4, I responded that the quotation reflected my contemporaneous notes of the July 29 meet-and-confer. Later that day, I conveyed Discord's position that Footnote 3 was fair, accurate, and responsive to information Applicant put before the Court.

41. Applicant's counsel did not request to meet and confer in person, by videoconference, or by phone before filing his Motion to Strike. Applicant's counsel filed the motion on August 5.

42. Thereafter, I asked Applicant's counsel to provide his own recollection of the conclusion of the July 29 meet-and-confer so that I could better understand whether there was a genuine factual disagreement regarding what had occurred.

43. I also advised Applicant's counsel that I disagreed with his factual contentions that multiple Discord attorneys were present at the July 29 meet-and-confer or that the parties held a conference on August 3.

44. Applicant's counsel did not provide his recollection of the conclusion of the conference. Instead, he responded that the filings speak for themselves.

45. Applicant agreed that the parties did not hold a conference on August 3.

**V. Privilege**

46. My contemporaneous notes regarding the July 29 meet-and-confer, as well as my communications with Discord concerning that conference, were prepared in the course of my representation of Discord and are protected by the attorney-client privilege and/or the work-product doctrine.

47. Discord does not waive those protections.

48. If the Court concludes that review of those materials is necessary to resolve Applicant's Motion, Discord is willing to submit them to the Court for in camera review.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on August 13, 2026 in Washington, D.C.

/s/ Laura-Kate Bernstein
Laura-Kate Bernstein